## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:15-cv-00518-WJM-NYW

DANIEL PERTILE, an individual; and
GINGER PERTILE, an individual,

    Plaintiffs.

v.

GENERAL MOTORS, LLC, a Delaware limited liability company;
TRW VEHICLE SAFETY SYSTEMS INC., a Delaware corporation;
KELSEY-HAYES COMPANY, a Delaware corporation;
JOHN DOE NOS. 1-25; and
JOHN DOE COMPANIES NOS. 1-25,

    Defendants.

---

## ~~PROPOSED~~ JOINT ESI PROTOCOL

---

~~ii. E-discovery plan~~.

To avoid discovery disputes, the parties have agreed to, <u>and the court orders,</u> the following:

    a) **Filtering**. In an effort to control costs and reduce the volume of ESI that is not relevant to this matter, the parties may filter ESI using the following techniques:

        i. *Full Text and Metadata Field Searches*. The parties may use reasonable search terms and metadata field criteria to filter for relevancy prior to review and production. With regard to custodial documents, including electronic mail, the parties have agreed and have begun to meet and confer in good faith in an attempt to reach an agreement on a list of custodians and search terms.

        ii. *Duplicates*. The parties may remove duplicative ESI to reduce unnecessary cost of reviewing and producing duplicative ESI. A piece of ESI may be removed as duplicative only if it is identical to a piece of ESI that is being

produced. For example, for two e-mails to be considered identical, the e-mail bodies, e-mail metadata, and the e-mail attachments must all match. A party may de-duplicate across custodians. Duplicates shall be determined by MD5 Hash value.

b) **Form of Production**.

  i. *Paper documents*. Paper documents will be produced as images. The images will be in black-and-white, single page, Group IV TIFF images. Each party will accommodate reasonable requests for production of images in color, and any document where the native or original version is in color and the document cannot be identified or understood without use of color (e.g., charts or graphs with information delineated solely by color), such document must be produced in color upon request, where available. Images of paper documents shall be organized either according to the manner in which they were maintained in the ordinary course of business, or to correspond to the categories in the document requests. Document boundaries will be logically determined. For all paper documents produced, the Item Type field will reflect "paper document" or "hard copy."

  ii. *Electronic data*. Electronic data will be produced, whenever possible, by all parties in single page Group IV TIFF format with accompanying metadata fields and full extracted text files, with the exception of the following file types that, to the extent produced, shall be produced in their native file format:

  - Presentations (PowerPoint);
  - Spreadsheets (Excel);
  - Autocad drawings;
  - Audio files;
  - Photos (jpg and jpeg); and

- Video files.

~~The parties have discussed whether GM will produce finite element analysis and/or other computer modeling in this case. At this stage, the parties have "agreed to disagree" with regard to whether such electronic documents should be produced. The parties will make a formal discovery request and response and may brief this issue to seek a judicial resolution.~~

Files such as spreadsheets, presentations, and databases will not be produced in native format if such files have been properly redacted (e.g., pursuant to attorney-client privilege).

~~At the outset, the parties are agreeable to production of most ESI in the form set forth above, but t~~<u>T</u>he parties agree and each reserve the right and/or recognize the right of the receiving party to request individual documents in native format. To that end, the parties agree that they will not withhold native documents (where available) for reasonable requests for production of particular documents in native format, even when such document was originally produced in the TIFF format set forth above. Pursuant to this understanding, the parties agree to move forward with initial disclosures in the above-stated format ~~and will work together to address any further issues with regard to this protocol following that production~~.

iii. ~~GM's Statement re: GM ESI: Based upon the age of the vehicle in this case and the time frame when it was designed and produced, GM anticipates that a limited volume of ESI, if any, may be located. GM will determine the key custodians relevant to this litigation and search where relevant information, documents and data is likely to be found for issues relevant in this case.~~

To the extent it is reasonably accessible GM agrees to <u>and will</u>

3

        search for emails that may be relevant to this case. GM will determine the key custodians relevant to and will search for emails that relate to the issues relevant to this case. If relevant emails are located, GM will produce them~~, subject to the entry of a suitable protective order~~. <u>To the extent a Protective Order is entered in this case, GM may designate e-mails under such Protective Order, if appropriate.</u>

iv. <u>~~TRW's Statement re: TRW ESI~~</u>~~: Consistent with their role as component part suppliers, TRW VSSI and Kelsey-Hayes do not expect to produce the volume of documents typically associated with large scale electronic discovery. As a consequence of this more limited volume of anticipated document production, TRW VSSI and Kelsey-Hayes typically comply with their discovery obligations on a targeted, case-by-case basis. Many of the specific strategies referred to in the proposed protocol may not apply to the document collection and production TRW VSSI and Kelsey-Hayes anticipate. TRW VSSI and Kelsey-Hayes agree to apply the strategies where practicable.~~ TRW VSSI and Kelsey-Hayes will produce TIFF images as described, including metadata load files accompanying those files for the fields described below where metadata is available, and will accommodate further requests for production of native file formats when reasonable, practicable, and necessary. TRW VSSI and Kelsey-Hayes will produce available digital video in native format. TRW VSSI and Kelsey-Hayes will apply sequential alphanumeric litigation tracking numbers to its document production. ~~Further, due to potential unforeseen complications resulting both from~~

4

~~the anticipated comparatively minor volume of TRW VSSI and Kelsey-Hayes's document production, and issues stemming from as yet unknown document format and technical production obstacles, TRW VSSI and Kelsey-Hayes propose they be afforded the opportunity to raise~~ <u>All parties may raise</u> specific objections, including undue hardship, arising from application of the ESI protocol by following the dispute resolution protocol included within the current proposal.

v. *Bates Numbering.* Production images shall be endorsed with a sequential padded alphanumeric bates number (e.g. ABC000001). Native files shall be named to match the endorsed bates number on the corresponding tiff image placeholder page (e.g. ABC000001.xls).

vi. *Load Files.* Each production set of ESI shall be accompanied by a load file which shall include a standard .DAT file for metadata and a standard Concordance .OPT image load file. The .DAT load file should contain: (1) all metadata fields; (2) OCR/extracted text path; and (3) path to native file. All native files should be in a separate folder. The load file shall contain, to the extent such information is available, the following metadata fields:

| Field Name | Description |
|---|---|
| STARTBATES | Starting Bates number for record |
| ENDBATES | All documents |
| STARTBATESATTACH | All documents, indicates first page of parent. |
| ENDBATESATTACH | All documents, indicates last page of last child. |
| CUSTODIANS | Individual/Source(s) assigned to the record at collection time |
| ITEM TYPE | All documents, indicates type of item produced (e.g., hard copy, email, e-file, etc.) |
| TO | E-mail Field |
| FROM | E-mail Field |
| CC | E-mail Field |

| BCC | E-mail Field |
|---|---|
| SUBJECT | E-mail Field |
| SENTDATE | E-mail Field |
| SENTTIME | E-mail Field |
| FILENAME | E-mail attachments and user-created documents |
| PAGE COUNT | Total pages for record |
| FILE EXTENSION | Original document file extension |
| | Email attachments and user-created documents |
| FILE SIZE | Original document file size |
| ORIGINAL FILE PATH | Path to where data was located on original media |
| IMAGE FILE PATH | All documents (in .OPT image load file) |
| AUTHOR | Author(s) of the document |
| | Email attachments and user-created documents |
| DATE CREATED | Creation date of original document; format yyyymmdd |
| | Email attachments and user-created documents |
| DATE MODIFIED | Last modification date of original document; format yyyymmdd |
| | Email attachments and user-created documents |
| TEXT | All documents (text provided as separate files, text path in dat file) |

      vii. The parties are not obligated to provide objective coding for documents that do not have metadata readily available, however, the parties anticipate that the majority of ESI documents produced will be accompanied by metadata.

      viii. *Production Medium*: All productions of ESI and Hard Copy documents shall be sent to requesting parties on an encrypted CD, DVD, hard drive, or other electronic media.

**c) Inadvertent Disclosure**

      i. Each party will conduct a review of its resulting Hard Copy and ESI for responsiveness, privilege, and confidentiality.

      ii. Regardless of the steps taken to prevent disclosure, if a party produces information that it later discovers, or in good faith later asserts, to be privileged or otherwise protected from disclosure, the production of that

6

      information will not be presumed to constitute a waiver of any applicable privileges or other protection, and the party receiving the privileged or protected information may not argue that the producing party failed to take reasonable steps to prevent production of the privileged or protected materials.

iii. Should either party produce privileged documents, Counsel may request, in writing, to claw back specific documents by referencing the Bates numbers or otherwise identifying the document. Upon such request, the parties shall treat the information as privileged or protected unless and until the parties agree otherwise or the Court determines the information is not privileged or protected.

iv. If the receiving party disagrees with the producing party's claim(s) of privilege and request for return of documents pursuant to this section, the receiving party shall provide written notice to the producing party within 14 days of receipt of the producing party's written request to return documents. The parties shall thereafter meet and confer in an attempt to resolve the dispute. The parties shall treat the information as privileged or protected unless and until the parties agree otherwise or the Court determines the information is not privileged or protected. Should the parties be unable to resolve the dispute, the receiving party shall have 21 days from the final meet and confer effort to file a motion for *in camera* review of the disputed document(s) and to seek a ruling on the privileged status of such document(s). <u>Nothing in this Order binds the court to perform such *in camera* review.</u>

    v. Upon a determination that the information is privileged or otherwise protected through the parties' agreement, ruling by the Court, or other circumstance, the receiving party shall return or destroy any copy of such matter in its possession <u>within 7 days</u>.

d) **Dispute Resolution.** If a party is unsatisfied with the opposing party's ESI production, the following dispute resolution protocol shall be followed:

  i. Within a reasonable time after receipt, the receiving party shall send written notice to the producing party that specifically details the particular deficiencies in the ESI production.

  ii. The producing party shall have 14 days to provide, in writing, a detailed response to the receiving party's specific concerns.

  iii. Within 7 days of the producing party's response, the parties shall meet and confer <u>in person or by telephone</u> in a good faith attempt to resolve the dispute, or to resolve as much of the dispute as possible.

  iv. If the parties are unable to resolve the dispute, they shall do the following:

    i. Agree, in writing, as to those issues upon which they do agree; and

    ii. Request an informal hearing with the Magistrate Judge to seek guidance on any unresolved issues <u>pursuant to the Magistrate Judge's informal discovery procedures</u>.

  v. Should a judicial hearing be necessary, the parties agree to orally present the dispute to the Magistrate Judge in an effort to obtain guidance as to resolution of any remaining disputes,<u> unless otherwise ordered by the</u>

<u>court to provide written argument and/or exhibits</u>.

vi. Within 7 days of the informal hearing, the parties shall meet and confer in a final good faith effort to resolve any remaining disputes in conformance with the Magistrate Judge's guidance.

vii. Should the parties remain unable to resolve the dispute after exhausting the above-stated avenues, the receiving party shall have 21 days to file a motion seeking a Court order regarding any remaining dispute(s). <u>However, nothing in this Order will be interpreted to interfere with the court's ability to consider, either upon motion of the party or *sua sponte*, whether such the issues presented in the motion are timely.</u>

DATED:  June 18, 2015                                BY THE COURT:


                                                     s/ Nina Y. Wang
                                                     United States Magistrate Judge