*Daniel Pertile, et al. vs.*

*General Motors, LLC, et al.*

*Telephonic Discovery Conference*

*October 07, 2016*



Stevens-Koenig Reporting
700 17th Street, Suite 1750
Denver, CO 80202
303-988-8470 (Office)   303-988-8478 (Fax)
SKReporting.com

Case No. 1:15-cv-00518-WJM-NYW   Document 175-1   filed 12/06/16   USDC Colorado
pg 2 of 8

Daniel Pertile, et al. vs.                                    Telephonic Discovery Conference
General Motors, LLC, et al.                                                October 07, 2016

Page 1

```
 1         IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF COLORADO
 3   Case No. 15-cv-00518-WJM-NYW
 4   _____
 5   DANIEL PERTILE, GINGER PERTILE,
 6       Plaintiffs,
 7   vs.
 8   GENERAL MOTORS, LLC, et al.,
 9       Defendants.
10   _____
11         Proceedings before NINA Y. WANG, United States
12   Magistrate Judge, United States District Court for the
13   District of Colorado, commencing at 2:01 p.m., October 7,
14   2016, in the United States Courthouse, Denver, Colorado.
15   _____
16         WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS
17   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...
18   _____
19                       APPEARANCES
20         JAMES L. GILBERT, Attorney at Law, appearing for
21   the plaintiffs.
22         MICKEY W. GREENE, Attorney at Law, appearing for
23   the defendant General Motors, LLC.
24   _____
25              TELEPHONIC DISCOVERY CONFERENCE
```

Page 2

```
 1              APPEARANCES (Cont'd)
 2        JASON P. HARTMAN, Attorney at Law, appearing
 3   telephonically for the defendants TRW Vehicle Safety Systems,
 4   Inc., and Kelsey-Hayes Company.
 5              P R O C E E D I N G S
 6        (Whereupon, the within electronically recorded
 7   proceedings are herein transcribed, pursuant to order of
 8   counsel.)
 9        THE COURTROOM DEPUTY:  Court is now in session.
10        THE COURT:  Good afternoon.  We are on the record
11   in 15-cv-518-WJM-NYW, Pertile, et al., versus General Motors,
12   LLC, et al.  Could I have appearances of counsel, please.
13   Can I have appearances of counsel, please.
14        MR. GREENE:  Yes, Your Honor.  This is Mickey
15   Greene.  I represent General Motors, Corporation -- or
16   General Motors, LLC, actually.
17        THE COURT:  Good afternoon.
18        MR. HARTMAN:  Good morning, Your Honor.  This is
19   Jason Hartman.  I represent TRW VSSI and Kelsey-Hayes
20   Company.
21        THE COURT:  Good afternoon.
22        MR. GILBERT:  Jim Gilbert for the plaintiffs.
23        THE COURT:  Good afternoon.  All right.  As I
24   understand, there is an issue with respect to certain data
25   associated with the expert report of Doctor, I'm sure I'm
```

Page 3

```
 1   going to say his name wrong, Vlahinos.
 2        UNIDENTIFIED SPEAKER:  Vlahinos.  Thank you.
 3        THE COURT:  Vlahinos.  All right.  I had an
 4   opportunity to look at your chart.  I have not looked
 5   in-depth at the other attachments because I've been tied up
 6   in another proceeding all day.  So as I understand it, this
 7   is GM's issue.
 8        MR. GREENE:  Yes, Your Honor.
 9        THE COURT:  All right.  Do you want to proceed,
10   Mr. Greene?
11        MR. GREENE:  Yes.  Very, very briefly, Your Honor.
12   This is -- this is a very simple issue.  Mr. -- Dr. Vlahinos'
13   deposition is scheduled for Monday morning in Denver.  The
14   parties have -- have agreed to provide the expert files of
15   their experts in advance of the deposition.  And now the
16   plaintiffs are refusing to provide the underlying data that
17   Dr. Vlahinos specifically used to develop his opinions in
18   this case.  And it's -- it's very simple.  I think, number
19   one, we -- we would be entitled to that information.  We're
20   entitled to that -- to that information to cross-examine him
21   on the underlying facts and data used to formulate his
22   opinions in this case.  This is not a hypothetical thing.
23   This is what he actually did to issue his report.  And we're
24   entitled to cross-examine him about the basis and to discover
25   the basis for those opinions.  We had -- we have an agreement
```

Page 4

```
 1   to produce the files of our experts.  They are trying to
 2   withhold this data from his file.  And I think they're doing
 3   it because they are still smarting from the Court's and Judge
 4   Martinez's denial of their motion on other issues.  But this
 5   is something actually used by their expert in this case to
 6   form his opinions in this case.  And, you know, there's no
 7   basis that I can see from which they can withhold the
 8   information.  And that's all I really have to say.  It's
 9   pretty straightforward.
10        THE COURT:  All right.  Thank you, Mr. Greene.
11   Mr. Gilbert.
12        MR. GILBERT:  Yeah.  We aren't smarting at all.
13   We understand the Court's ruling, and we understand Judge
14   Martinez's ruling.  And GM insisted on a rule for when it did
15   not want to produce its underlying data that, incidentally,
16   we showed you, are being relied upon by their expert, Ms. Lu.
17   They did not and have refused for months.  We had a monthlong
18   fight with General Motors over getting their underlying data,
19   their model produced.  And that would enable us to attack
20   their opinions, their expert opinions, their corporate
21   opinions on whether this roof is indeed, quote, strong, as
22   their expert claims, and, quote, provides occupant
23   protection, as their expert claims in their report, pages of
24   which we provided to the Court a little bit ago.
25        Now, here is the distinction.  They -- they
```

Case No. 1:15-cv-00518-WJM-NYW   Document 175-1   filed 12/06/16   USDC Colorado
pg 3 of 8

Daniel Pertile, et al. vs.                                                      Telephonic Discovery Conference
General Motors, LLC, et al.                                                                   October 07, 2016

Page 5

 1  produced -- or they are relying upon FEMs and CAE, but have
 2  denied us the ability to challenge those FEMs and CAE by not
 3  producing anything other than the written reports which they
 4  said is all we needed.  They say, Go out and do your own
 5  model.  Well, we had to do that.  We spent tens of thousands
 6  of dollars because they would not produce their models.  And
 7  we went out and did our own model.  And, incidentally, as the
 8  Court may have under -- understood from the filings in Judge
 9  Martinez's Court, we later found out that contrary to what
10  they told Your Honor, they have existing FEMs.  They have
11  them and they have had them for a long time.  And they denied
12  the existence of those during the monthlong fight previously.
13  And what we learned, after all of that was over, is that
14  they, in fact, have had for sometime, years, at least, two
15  models of our truck with modifications.  And they have
16  refused to produce those.  And I believe they seriously
17  misled the clients and they misled the Court when they said
18  they didn't have that stuff during the fights.  In contrast
19  to not getting us anything other than a three-page -- three
20  pages out of a five-page report, they didn't even give us the
21  full five pages.  We gave them 17 pages.  We also are
22  intending to provide, unlike what they gave us, a fully
23  functional finite element model.  We will -- we have provided
24  and will provided (sic) a report that describes in exquisite
25  detail how we exercised that model.  We are providing video.

Page 6

 1  We're providing images.  We're providing the data plots.  We
 2  gave them a full list of the modifications we did to that
 3  roof to make it strong so that it would protect.  And we also
 4  gave them the validation reports.
 5          Now, in their -- their -- their chart they say
 6  that the GM experts made no use of any finite element model
 7  that was the subject of the plaintiffs' discovery request.
 8  That is just plain flat wrong.  We used that.  And we went
 9  through months of litigation over those models, and only
10  later determined that they had them.  And they even in this
11  chart they filed today said that if those models existed they
12  would provide us those models.  Well, where are they?  Ms. Lu
13  is going to be deposed on Wednesday.  So I assume that
14  because of what they told the Court today, Monday morning
15  we'll get all of those finite element models that they denied
16  having until recently.  And now we'll get them finally,
17  having discovered them, after all of this battle ended
18  several months ago.  Our report explains in great detail what
19  was done with our model.  All they have got to do -- we gave
20  them the model we used.  All they've got to do is to take
21  that model, which I believe they already have anyway, but we
22  gave it to them.  They take that model, look at the
23  modifications which are in detail described, and do what they
24  said we should do, and look at the model, create those
25  inputs.  They'll get the same outputs we do.  But they

Page 7

 1  shouldn't play by one rule for them and another rule for us.
 2          So I think this is really a matter of -- of
 3  fairness.  And I think that's all I have, Judge.  But once
 4  again, we have given them so much more than they gave us.
 5  And they put us to the task of spending tens of thousands of
 6  dollars to create these models.  They don't need the inputs
 7  and outputs.  We do not intend to include any inputs and
 8  outputs in the file.  There will be no mention or no showing
 9  of inputs or outputs to the jury.  The jury will see the
10  model as it was modified and conceived.  How they took a --
11  how -- how we have taken a roof that flattened down and
12  paralyzed a young man, and created modifications that made it
13  stronger, and would have protected this plaintiff and
14  thousands of other consumers.  That's all I have.
15          THE COURT:  Thank you, Mr. Gilbert.  Mr. Greene.
16          MR. GREENE:  Yes, Your Honor.  Thank you.  It's
17  our position he is smarting a little bit from the Court's
18  order.
19          A couple of things.  Number one, he didn't mention
20  one word about whether he's producing the entire expert file.
21  He is not.  That is the only issue that is present here.
22  That's thing number one.  That's the sum and total of the
23  issue.
24          Secondly, he's misrepresenting what Ms. Lu's
25  report says.  She used the report of the CAE that was

Page 8

 1  included -- an excerpt of which was included in her report.
 2  She has not used the models.  She has not done any finite
 3  element analysis using the existing models that were
 4  discussed during the discovery phase of -- of this case.  So
 5  that's a misrepresentation.
 6          The issue on the three out of five pages, it turns
 7  out that the -- the report has a typo in the number of pages
 8  that existed with it.  They do have the full report.  And the
 9  bottom line is that this information that should be produced
10  is part of his file.  Mr. Gilbert cannot deny that it's part
11  of this expert's file.  And if it's part of his expert's
12  file, it should be produced.
13          THE COURT:  All right.
14          MR. GILBERT:  But, Judge, one --
15          THE COURT:  Mm-hmm.
16          MR. GILBERT:  -- just one second.  Words are
17  words.  And when you look at the Lu report, she refers to all
18  of the work done by CAE to provide a structure -- develop a
19  structure optimized to manage the -- manage the crash energy
20  and provide reasonable occupant protections.  She is using
21  GM -- she was the corporate spokesperson for General Motors.
22  They are relying on these existing models.  They will not
23  only give us the model -- not only refuse to give us the
24  models, they clearly won't give us any input and outputs.
25  And then on page 5 of the report, it says in an FM VSS 216

Case No. 1:15-cv-00518-WJM-NYW    Document 175-1    filed 12/06/16    USDC Colorado
pg 4 of 8

| Daniel Pertile, et al. vs. | Telephonic Discovery Conference |
|---|---|
| General Motors, LLC, et al. | October 07, 2016 |

Page 9

1  evaluation conducted by GMCA engineering group in July of
2  2005, they talk about the testing that was done. They signed
3  the truck off in CAE. Now, they claim that later they
4  destroyed that model. But, luckily, we -- we were fortunate
5  to get an admission in a June deposition that they have two
6  existing finite element models for our truck. And if GM can
7  talk about this truck and the CAE and the modeling to the
8  jury, why won't they cough up the underlying data? But they
9  expect us to -- us to do something they refuse to do.
10      THE COURT: Okay. Thank you, Mr. Gilbert. All
11 right. Looking at what I have in front of me today, this is
12 how I rule. Rule 26(a)(2)(B)(ii) requires that an expert
13 identify in his report the facts or data considered by the
14 witness in forming the opinion offered. It doesn't seem to
15 me that there's a dispute with respect to whether or not this
16 data that is at issue was relied upon in forming the opinion
17 offered and, therefore, I think GM is entitled to its
18 production and to its production prior to the deposition on
19 Monday.
20      Now, that doesn't resolve this underlying issue,
21 Mr. Gilbert, of whether or not Ms. Lu relies on upon an FE
22 model or GM relies on an FE model in which you would also be
23 entitled to the facts and data considered by the witness in
24 forming the opinion offered. I don't have Ms. Lu's expert
25 report in front of me. I recall that the issue with respect

Page 10

1  to the FEM models were -- was hard fought. It was a close
2  call. I also remember there was this issue of the
3  Unigraphics modeling. And I'm not exactly sure how the
4  Unigraphic files fits in with respect to the -- the
5  information that you, Mr. Gilbert, believe that you're
6  entitled to. Since you're proceeding with the deposition of
7  Ms. Lu on Wednesday, Mr. Gilbert, to the extent that she
8  testifies in a manner that you believe implicates production
9  of further data, whether it's inputs or outputs or FEM --
10 existing FEM models, I would trust that you would file a
11 formal motion because these issues are -- tend to be
12 complicated. And I would need some additional information
13 than what we can cover in this setting. So that is to say
14 that this Court intends on applying the 26(a)(2)(B)(ii)
15 consistently.
16      So to the extent, Mr. Gilbert, that you're
17 required to produce the underlying facts or data, to the
18 extent that GM's own expert report or reliance on these
19 models implicate that data, all parties should expect that GM
20 will be required to produce the commensurate data if it is,
21 in fact, at issue.
22      All right. Counsel, is there anything further?
23      MR. GILBERT: Can I ask a question?
24      THE COURT: Yes.
25      MR. GILBERT: How do we know whether or not it's

Page 11

1  at issue? Now that the Court has made a ruling, and GM can
2  fashion the testimony of Lu, so now she will deny specific
3  reliance on something she clearly refers to in her report.
4      THE COURT: Well --
5      MR. GILBERT: How are we going to know?
6      THE COURT: I assume you're going to ask her about
7  her report. And I would assume, just as any other deponent,
8  as she's under oath and, therefore, should be answering
9  accurately. I mean, how else -- what else does the Court
10 have to rely upon?
11      MR. GILBERT: The Court has to rely upon the
12 representations of GM. For example, the representations for
13 many months that they didn't have these models, which turn
14 out to be untrue. That's -- that's my concern. That's my
15 worry. That's what I fret about. That we're going to get
16 the same kind of doublespeak Wednesday that we got and the
17 Court got for many months, That we don't have this stuff.
18 And it turns out to be flatly false.
19      THE COURT: Well, Mr. Gilbert, how do you -- in
20 our own mind, how does the Court make that determination?
21      MR. GILBERT: I don't know. I'm not the judge.
22 And I'm -- I sympathize with you, Judge Wang.
23      MR. GREENE: Your Honor, may I -- may I interrupt
24 and -- or might I interject?
25      THE COURT: Yes, Mr. Greene.

Page 12

1      MR. GREENE: The -- the distinguishing factor here
2  is that the reports -- the parts of Ms. Lu's report that I
3  believe Mr. Gilbert referred to is her description of the
4  historical development process used by GM back in -- and this
5  vehicle was developed in the early 2000s. And -- and so it
6  was developed in that aspect. And it was validated for roof
7  strength using a finite element analysis. And that analysis
8  that was used for that test report, the test report was
9  produced, was -- was -- was produced in the case. And Ms. Lu
10 has not held up some old model that was used for a different
11 model to do any analysis in this case. And, in fact, you
12 know, you can go out and test the vehicle and -- and -- and
13 see what results you get physically. So I -- I think we're
14 dealing with apples and oranges here.
15     MR. GILBERT: Judge, when it comes to GM's
16 responsibility, it's called history. When it comes to our
17 responsibility, they call it an expert file. And that is
18 just not fair, especially after the months of
19 misrepresentation.
20     THE COURT: All right. Well, Mr. Gilbert, I
21 trust -- I mean, I pose it to you because you're obviously
22 closer to these issues than I am. The -- obviously the Court
23 is not going to find or sanction GM for what you call, quote,
24 months of misrepresentation, unquote, without a clear record
25 of doing so and a hearing on the matter. To the extent that

**Daniel Pertile, et al. vs.**  
**General Motors, LLC, et al.**

**Telephonic Discovery Conference**  
**October 07, 2016**

Page 13

1  you believe that you can establish with the Court that there
2  have been misrepresentations, that you can point to specific
3  requests and inaccurate statements in response, then what I'm
4  doing is inviting you to file a motion.  But what I can't do
5  is ignore Rule 26(a)(2)(B)(ii).  And what I'm saying to you
6  is if, in fact, you persuade this Court or Judge Martinez
7  that Ford did, in fact, rely on FEM data or FEM models that
8  it is not -- it is not producing, then the same standard will
9  be applied to GM at that point.
10       MR. GILBERT:  Thank you, Judge.  I think I
11  understand the Court's ruling.  And I will -- I will
12  gracefully abide.
13       THE COURT:  All right.  Anything further --
14       MR. GREENE:  As will I.
15       THE COURT:  -- counsel?
16       MR. GILBERT:  Thank you, Judge.  Have a nice
17  weekend.
18       THE COURT:  You too.  We'll be in recess.
19       MR. GREENE:  Thank you, Judge.
20       (Whereupon, the within hearing was then in
21  conclusion at 2:21 p.m.)
22
23
24       I certify that the foregoing is a correct
25  transcript, to the best of my knowledge and belief (pursuant

Page 14

1  to the quality of the recording) from the record of
2  proceedings in the above-entitled matter.
3
4
5
6  /s/ Laurel S. Tubbs                November 29, 2016
7  Signature of Transcriber            Date
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Case No. 1:15-cv-00518-WJM-NYW    Document 175-1    filed 12/06/16    USDC Colorado
pg 6 of 8

Daniel Pertile, et al. vs.                                         Telephonic Discovery Conference
General Motors, LLC, et al.                                                      October 07, 2016

**1**

**15-cv-518-wjm-nyw**
  2:11
**17** 5:21

**2**

**2000s** 12:5
**2005** 9:2
**2016** 14:6
**216** 8:25
**26(a)(2)(b)(ii)** 9:12
  10:14 13:5
**29** 14:6
**2:21** 13:21

**5**

**5** 8:25

**A**

**abide** 13:12
**ability** 5:2
**above-entitled** 14:2
**accurately** 11:9
**additional** 10:12
**admission** 9:5
**advance** 3:15
**afternoon** 2:10,17,
  21,23
**agreed** 3:14
**agreement** 3:25
**analysis** 8:3 12:7,11
**answering** 11:8
**appearances** 2:1,
  12,13
**appearing** 2:2
**apples** 12:14
**applied** 13:9
**applying** 10:14

**aspect** 12:6
**assume** 6:13 11:6,7
**attachments** 3:5
**attack** 4:19
**Attorney** 2:2

**B**

**back** 12:4
**basis** 3:24,25 4:7
**battle** 6:17
**belief** 13:25
**bit** 4:24 7:17
**bottom** 8:9
**briefly** 3:11

**C**

**CAE** 5:1,2 7:25 8:18
  9:3,7
**call** 10:2 12:17,23
**called** 12:16
**case** 3:18,22 4:5,6
  8:4 12:9,11
**certify** 13:24
**challenge** 5:2
**chart** 3:4 6:5,11
**claim** 9:3
**claims** 4:22,23
**clear** 12:24
**clients** 5:17
**close** 10:1
**closer** 12:22
**commensurate**
  10:20
**Company** 2:4,20
**complicated** 10:12
**conceived** 7:10
**concern** 11:14
**conclusion** 13:21
**conducted** 9:1

**considered** 9:13,23
**consistently** 10:15
**consumers** 7:14
**Cont'd** 2:1
**contrary** 5:9
**contrast** 5:18
**corporate** 4:20 8:21
**Corporation** 2:15
**correct** 13:24
**cough** 9:8
**counsel** 2:8,12,13
  10:22 13:15
**couple** 7:19
**Court** 2:9,10,17,21,
  23 3:3,9 4:10,24 5:8,
  9,17 6:14 7:15 8:13,
  15 9:10 10:14,24
  11:1,4,6,9,11,17,19,
  20,25 12:20,22 13:1,
  6,13,15,18
**Court's** 4:3,13 7:17
  13:11
**COURTROOM** 2:9
**cover** 10:13
**crash** 8:19
**create** 6:24 7:6
**created** 7:12
**cross-examine**
  3:20,24

**D**

**data** 2:24 3:16,21 4:2,
  15,18 6:1 9:8,13,16,
  23 10:9,17,19,20
  13:7
**Date** 14:7
**day** 3:6
**dealing** 12:14
**defendants** 2:3
**denial** 4:4
**denied** 5:2,11 6:15
**Denver** 3:13

**deny** 8:10 11:2
**deponent** 11:7
**deposed** 6:13
**deposition** 3:13,15
  9:5,18 10:6
**DEPUTY** 2:9
**describes** 5:24
**description** 12:3
**destroyed** 9:4
**detail** 5:25 6:18,23
**determination**
  11:20
**determined** 6:10
**develop** 3:17 8:18
**developed** 12:5,6
**development** 12:4
**discover** 3:24
**discovered** 6:17
**discovery** 6:7 8:4
**discussed** 8:4
**dispute** 9:15
**distinction** 4:25
**distinguishing** 12:1
**Doctor** 2:25
**dollars** 5:6 7:6
**doublespeak** 11:16

**E**

**early** 12:5
**electronically** 2:6
**element** 5:23 6:6,15
  8:3 9:6 12:7
**enable** 4:19
**ended** 6:17
**energy** 8:19
**engineering** 9:1
**entire** 7:20
**entitled** 3:19,20,24
  9:17,23 10:6

**establish** 13:1
**et al** 2:11,12
**evaluation** 9:1
**excerpt** 8:1
**exercised** 5:25
**existed** 6:11 8:8
**existence** 5:12
**existing** 5:10 8:3,22
  9:6 10:10
**expect** 9:9 10:19
**expert** 2:25 3:14 4:5,
  16,20,22,23 7:20
  9:12,24 10:18 12:17
**expert's** 8:11
**experts** 3:15 4:1 6:6
**explains** 6:18
**exquisite** 5:24
**extent** 10:7,16,18
  12:25

**F**

**fact** 5:14 10:21 12:11
  13:6,7
**factor** 12:1
**facts** 3:21 9:13,23
  10:17
**fair** 12:18
**fairness** 7:3
**false** 11:18
**fashion** 11:2
**FE** 9:21,22
**FEM** 10:1,9,10 13:7
**FEMS** 5:1,2,10
**fight** 4:18 5:12
**fights** 5:18
**file** 4:2 7:8,20 8:10,
  11,12 10:10 12:17
  13:4
**filed** 6:11
**files** 3:14 4:1 10:4

Case No. 1:15-cv-00518-WJM-NYW    Document 175-1    filed 12/06/16    USDC Colorado
pg 7 of 8

Daniel Pertile, et al. vs.                                              Telephonic Discovery Conference
General Motors, LLC, et al.                                             October 07, 2016

filings  5:8
finally  6:16
find  12:23
finite  5:23 6:6,15 8:2 9:6 12:7
fits  10:4
five-page  5:20
flat  6:8
flatly  11:18
flattened  7:11
FM  8:25
Ford  13:7
foregoing  13:24
form  4:6
formal  10:11
forming  9:14,16,24
formulate  3:21
fortunate  9:4
fought  10:1
found  5:9
fret  11:15
front  9:11,25
full  5:21 6:2 8:8
fully  5:22
functional  5:23

**G**

gave  5:21,22 6:2,4, 19,22 7:4
General  2:11,15,16 4:18 8:21
get all  6:15
Gilbert  2:22 4:11,12 7:15 8:10,14,16 9:10, 21 10:5,7,16,23,25 11:5,11,19,21 12:3, 15,20 13:10,16
give  5:20 8:23,24
GM  4:14 6:6 8:21 9:6, 17,22 10:19 11:1,12 12:4,23 13:9

GM's  3:7 10:18 12:15
GMCA  9:1
Good  2:10,17,18,21, 23
gracefully  13:12
great  6:18
Greene  2:14,15 3:8, 10,11 4:10 7:15,16 11:23,25 12:1 13:14, 19
group  9:1

**H**

hard  10:1
Hartman  2:2,18,19
hearing  12:25 13:20
held  12:10
historical  12:4
history  12:16
Honor  2:14,18 3:8,11 5:10 7:16 11:23
hypothetical  3:22

**I**

identify  9:13
ignore  13:5
images  6:1
implicate  10:19
implicates  10:8
in-depth  3:5
inaccurate  13:3
incidentally  4:15 5:7
include  7:7
included  8:1
information  3:19,20 4:8 8:9 10:5,12
input  8:24
inputs  6:25 7:6,7,9 10:9
insisted  4:14

intend  7:7
intending  5:22
intends  10:14
interject  11:24
interrupt  11:23
inviting  13:4
issue  2:24 3:7,12,23 7:21,23 8:6 9:16,20, 25 10:2,21 11:1
issues  4:4 10:11 12:22

**J**

Jason  2:2,19
Jim  2:22
judge  4:3,13 5:8 7:3 8:14 11:21,22 12:15 13:6,10,16,19
July  9:1
June  9:5
jury  7:9 9:8

**K**

Kelsey-hayes  2:4, 19
kind  11:16
knowledge  13:25

**L**

Laurel  14:6
Law  2:2
learned  5:13
list  6:2
litigation  6:9
LLC  2:12,16
long  5:11
looked  3:4
Lu  4:16 6:12 8:17 9:21 10:7 11:2 12:9
Lu's  7:24 9:24 12:2

luckily  9:4

**M**

made  6:6 7:12 11:1
make  6:3 11:20
man  7:12
manage  8:19
manner  10:8
Martinez  13:6
Martinez's  4:4,14 5:9
matter  7:2 12:25 14:2
mention  7:8,19
Mickey  2:14
mind  11:20
misled  5:17
misrepresentation  8:5 12:19,24
misrepresentations  13:2
misrepresenting  7:24
Mm-hmm  8:15
model  4:19 5:5,7,23, 25 6:6,19,20,21,22, 24 7:10 8:23 9:4,22 12:10,11
modeling  9:7 10:3
models  5:6,15 6:9, 11,12,15 7:6 8:2,3, 22,24 9:6 10:1,10,19 11:13 13:7
modifications  5:15 6:2,23 7:12
modified  7:10
Monday  3:13 6:14 9:19
monthlong  4:17 5:12
months  4:17 6:9,18 11:13,17 12:18,24
morning  2:18 3:13 6:14

motion  4:4 10:11 13:4
Motors  2:11,15,16 4:18 8:21

**N**

needed  5:4
nice  13:16
November  14:6
number  3:18 7:19,22 8:7

**O**

oath  11:8
occupant  4:22 8:20
offered  9:14,17,24
opinion  9:14,16,24
opinions  3:17,22,25 4:6,20,21
opportunity  3:4
optimized  8:19
oranges  12:14
order  2:7 7:18
outputs  6:25 7:7,8,9 8:24 10:9

**P**

p.m.  13:21
pages  4:23 5:20,21 8:6,7
paralyzed  7:12
part  8:10,11
parties  3:14 10:19
parts  12:2
persuade  13:6
Pertile  2:11
phase  8:4
physically  12:13
plain  6:8
plaintiff  7:13

Case No. 1:15-cv-00518-WJM-NYW   Document 175-1   filed 12/06/16   USDC Colorado
pg 8 of 8

Daniel Pertile, et al. vs.
General Motors, LLC, et al.

Telephonic Discovery Conference
October 07, 2016

**plaintiffs** 2:22 3:16
**plaintiffs'** 6:7
**play** 7:1
**plots** 6:1
**point** 13:2,9
**pose** 12:21
**position** 7:17
**present** 7:21
**pretty** 4:9
**previously** 5:12
**prior** 9:18
**proceed** 3:9
**proceeding** 3:6 10:6
**proceedings** 2:7 14:2
**process** 12:4
**produce** 4:1,15 5:6, 16 10:17,20
**produced** 4:19 5:1 8:9,12 12:9
**producing** 5:3 7:20 13:8
**production** 9:18 10:8
**protect** 6:3
**protected** 7:13
**protection** 4:23
**protections** 8:20
**provide** 3:14,16 5:22 6:12 8:18,20
**provided** 4:24 5:23,24
**providing** 5:25 6:1
**pursuant** 2:7 13:25
**put** 7:5

**Q**

**quality** 14:1
**question** 10:23
**quote** 4:21,22 12:23

**R**

**reasonable** 8:20
**recall** 9:25
**recently** 6:16
**recess** 13:18
**record** 2:10 12:24 14:1
**recorded** 2:6
**recording** 14:1
**referred** 12:3
**refers** 8:17 11:3
**refuse** 8:23 9:9
**refused** 4:17 5:16
**refusing** 3:16
**reliance** 10:18 11:3
**relied** 4:16 9:16
**relies** 9:21,22
**rely** 11:10,11 13:7
**relying** 5:1 8:22
**remember** 10:2
**report** 2:25 3:23 4:23 5:20,24 6:18 7:25 8:1,7,8,17,25 9:13,25 10:18 11:3,7 12:2,8
**reports** 5:3 6:4 12:2
**represent** 2:15,19
**representations** 11:12
**request** 6:7
**requests** 13:3
**required** 10:17,20
**requires** 9:12
**resolve** 9:20
**respect** 2:24 9:15,25 10:4
**response** 13:3
**responsibility** 12:16,17
**results** 12:13

**roof** 4:21 6:3 7:11 12:6
**rule** 4:14 7:1 9:12 13:5
**ruling** 4:13,14 11:1 13:11

**S**

**Safety** 2:3
**sanction** 12:23
**scheduled** 3:13
**session** 2:9
**setting** 10:13
**showed** 4:16
**showing** 7:8
**sic** 5:24
**Signature** 14:7
**signed** 9:2
**simple** 3:12,18
**smarting** 4:3,12 7:17
**SPEAKER** 3:2
**specific** 11:2 13:2
**specifically** 3:17
**spending** 7:5
**spent** 5:5
**spokesperson** 8:21
**standard** 13:8
**statements** 13:3
**straightforward** 4:9
**strength** 12:7
**strong** 4:21 6:3
**stronger** 7:13
**structure** 8:18,19
**stuff** 5:18 11:17
**subject** 6:7
**sum** 7:22
**sympathize** 11:22
**Systems** 2:3

**T**

**talk** 9:2,7
**task** 7:5
**telephonically** 2:3
**tend** 10:11
**tens** 5:5 7:5
**test** 12:8,12
**testifies** 10:8
**testimony** 11:2
**testing** 9:2
**thing** 3:22 7:22
**things** 7:19
**thousands** 5:5 7:5, 14
**three-page** 5:19
**tied** 3:5
**time** 5:11
**today** 6:11,14 9:11
**told** 5:10 6:14
**total** 7:22
**transcribed** 2:7
**Transcriber** 14:7
**transcript** 13:25
**truck** 5:15 9:3,6,7
**trust** 10:10 12:21
**TRW** 2:3,19
**Tubbs** 14:6
**turn** 11:13
**turns** 8:6 11:18
**typo** 8:7

**U**

**underlying** 3:16,21 4:15,18 9:8,20 10:17
**understand** 2:24 3:6 4:13 13:11
**understood** 5:8
**UNIDENTIFIED** 3:2

**Unigraphic** 10:4
**Unigraphics** 10:3
**unlike** 5:22
**unquote** 12:24
**untrue** 11:14

**V**

**validated** 12:6
**validation** 6:4
**vehicle** 2:3 12:5,12
**versus** 2:11
**video** 5:25
**Vlahinos** 3:1,2,3,17
**Vlahinos'** 3:12
**VSS** 8:25
**VSSI** 2:19

**W**

**Wang** 11:22
**Wednesday** 6:13 10:7 11:16
**weekend** 13:17
**withhold** 4:2,7
**word** 7:20
**words** 8:16,17
**work** 8:18
**worry** 11:15
**written** 5:3
**wrong** 3:1 6:8

**Y**

**years** 5:14
**young** 7:12