**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 15-cv-0518-WJM-NYW

DANIEL PERTILE, and
GINGER PERTILE,

    Plaintiffs,

v.

GENERAL MOTORS, LLC, a Delaware limited liability company,
TRW VEHICLE SAFETY SYSTEMS, INC., a Delaware corporation,
KELSEY-HAYES COMPANY, a Delaware corporation,

    Defendants.

---

**ORDER DENYING DEFENDANT GENERAL MOTORS LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

In this personal injury/product liability action pending under the Court's diversity jurisdiction, 28 U.S.C. § 1332(a), Plaintiffs Daniel and Ginger Pertile (together, "Plaintiffs" or the "Pertiles") bring suit against Defendants General Motors, LLC ("GM"), TRW Vehicle Safety Systems, Inc., and Kelsey-Hayes Company, for various claims, including for negligence, breach of warranty, violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 *et seq.*, and loss of consortium. (*See generally* ECF No. 254.)

Now before the Court is Defendant General Motors LLC's Motion for Partial Summary Judgment (ECF No. 154 (Defendant's "Motion")), which was separately joined by Defendants TRW Vehicle Safety Systems, Inc. and Kelsey-Hayes Company (ECF No. 161), and seeks summary judgment against Ginger Pertile's claim for loss of

consortium. For the reasons explained below, the Motion is denied.

## I. BACKGROUND

This case arises from a single vehicle rollover accident, in which Plaintiff Daniel Pertile was injured, near Vernal, Utah, on February 25, 2013. (*See generally* ECF No. 254 at 7–17.) Among the pending claims is a claim for loss of consortium, by which Ginger Pertile seeks damages for having "lost the love, support, companionship, affection, consortium, care, comfort, household services, aid and society of her husband, Daniel Pertile." (ECF No. 31 ¶ 134; *see also* ECF No. 254 at 5, 10.)

The undisputed facts reflect that Daniel and Ginger Pertile were not civilly married at the time of the accident, but had been in a committed relationship for close to ten years at that time. (ECF No. 162 at 2, ¶ 1; ECF No. 167 at 2, ¶ 1.)

In the instant Motion, Defendants argue that Ginger Pertile's claim for loss of consortium fails as a matter of law because the Pertiles were not married at the time of the accident, while the Pertiles claim that they had a valid common law marriage under Colorado law, and that her loss of consortium claim may proceed on that basis.

## II. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one

party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

In the Tenth Circuit, "the moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (alterations incorporated; internal quotation marks omitted). "When the moving party does not have the ultimate burden of persuasion at trial, it has both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Id.*

### III. ANALYSIS

#### A. Did the Pertiles Have a Valid Common Law Marriage?

"Colorado is . . . one of several states, along with the District of Columbia, that still recognize common law marriages." *In re Marriage of J.M.H. & Rouse*, 143 P.3d 1116, 1117 (Colo. App. 2006) ("*J.M.H.*") "[I]n a common law marriage, two persons create a valid marital relationship without the benefit of a legal marriage ceremony performed according to statutory requirements." *J.M.H.*, 143 P.3d at 1118. In Colorado, "[a] common law marriage is established by [1] the mutual consent or agreement of the parties to be husband and wife, followed by [2] a mutual and open

3

assumption of a marital relationship." *People v. Lucero*, 747 P.2d 660, 663 (Colo. 1987). Courts require that the parties' mutual consent must "be manifested by conduct that gives evidence of the mutual understanding of the parties," and "such conduct in a form of mutual public acknowledgment of the marital relationship is not only important evidence of the existence of mutual agreement but is essential to the establishment of a common law marriage." *Id.*

Disputes over the existence of a common law marriage often present problems of proof or evidence. *See Lucero*, 747 P.2d at 664. However, it is well established that "the agreement need not have been in words," and that "if the agreement is denied or cannot be shown, its existence may be inferred from evidence of cohabitation and general repute." *Id.* Parties seeking to prove the existence of a common law marriage may rely on "any form of evidence" that manifests their intent to be married:

> Our formulations of the requirement of conduct manifesting or confirming the parties' understanding or agreement have taken many forms. * * * The two factors that most clearly show an intention to be married are cohabitation and a general understanding or reputation among persons in the community in which the couple lives that the parties hold themselves out as husband and wife. Specific behavior that may be considered includes maintenance of joint banking and credit accounts; purchase and joint ownership of property; the use of the man's surname by the woman; the use of the man's surname by children born to the parties; and the filing of joint tax returns. However, there is no single form that any such evidence must take. Rather, any form of evidence that openly manifests the intention of the parties that their relationship is that of husband and wife will provide the requisite proof from which the existence of their mutual understanding can be inferred.

*Lucero*, 747 P. 2d at 665 (citations omitted). Moreover, "whether a common law

4

marriage exists turns on issues of fact and credibility." *Id.*; *accord* Brenda L. Storey, *Defending Against A Common Law Marriage Claim*, Colorado Lawyer, March 2005, at 69 ("*Storey*") ("Common law marriage claims are fact-driven, and no single set of facts is required to prove or defend against such a claim.").

Here, GM's Motion initially asserted that the Pertiles were not married at the time of the accident. In reliance, they cited the Pertiles' own deposition testimony offered in response to questions (largely leading questions) from GM's counsel regarding when they were engaged and married.[1]

---

[1] The relevant testimony relied upon by GM is as follows:

> Q. You were married shortly after your crash; is that right?
> A. Yes.
> Q. Tell me how that came to be[?] * * * You hadn't originally intended to get married at that time; is that true?
> A. No, we didn't intend to get married then.
> Q. Did you have plans to get married at all?
> A. I was engaged to her, yes, but . . .
> Q. So you had become engaged. Did you have a date in mind?
> A. Didn't have a date set, no.
> Q. So how did it come that you and Ginger decided to marry while you were in the hospital in February of 2013 or March or whenever it was?
> A. It just seemed right.

(ECF No. 154-1 at 4 (Daniel Pertile).) And:

> Q. What was your date of marriage?
> A. March 1, 2013.
> Q. So you were married shortly after the crash at issue; is that true?
> A. That is correct.
> Q. So at what point had you become engaged?
> A. That summer, fall before we became engaged and I was planning a wedding.
> 
> * * *
> 
> Q. You were living together at that time [of the accident],

5

The Pertiles respond by arguing that although their "formal civil marriage ceremony" occurred after the accident, they had a valid common law marriage at the time of the accident. They submitted affidavits reciting various facts that tend to prove this assertion. Several of these are types of proof which the Colorado Supreme Court explicitly endorsed in *Lucero*. For instance, the Pertiles had been living together for approximately seven to eight years before the accident; they had maintained a joint banking account for several years; they also had a son before the accident, who shares Daniel Pertile's last name. (*See* ECF No.165-1 ¶¶ 3–5.) These are all types of proof expressly permitted by *Lucero*. 747 P.2d at 665. In addition, prior to the accident, the Pertiles shared a joint auto insurance policy, Ginger Pertile was covered under Daniel Pertile's employer-based health insurance, and she was named as the beneficiary of his life insurance. (ECF No. 165-1 ¶¶ 6–8.) The Court finds these facts also fairly qualify as "any form of evidence that openly manifests the intention of the parties that their relationship is that of husband and wife." *Id.* at 665. Accordingly, the Court finds that this factual record demonstrates, at the least, a genuine dispute of fact as to whether the Pertiles had a valid common law marriage at the time of the accident.

---

        though, not yet married; is that right?
A.    Yes.

* * *

Q.    Was that the planned date [March 1, 2013] that you had set up for the wedding, or did you move it in some way?
A.    I moved it.
Q.    Why was that?
A.    I had planned a wedding for the summer [of 2013] and had realized that we were going to be living in hospitals and hotels, and we decided that we just wanted to be married and we could deal with the wedding at a later time.

(*Id.* at 6; ECF No. 162-3 at 4, 12 (Ginger Pertile).)

GM argues that the Pertiles' deposition testimony shows they did not "hold themselves out as married" prior to 2013, thus disproving their claim of a common law marriage as a matter of law. (*See* ECF No. 167 at 3.) The Court disagrees. GM cites only *Lucero*, but reads too much into its language requiring a "mutual understanding," of a marriage. The Pertiles need not have had an express agreement "in words." *Lucero*, 747 P.2d at 664. Rather, their mutual understanding may have been "only tacitly expressed," and may be "inferred from evidence of cohabitation and general repute." *Id.* What is required is proof of "conduct that gives evidence of the mutual understanding of the parties," including showing "such conduct in a form of mutual public acknowledgment of the marital relationship." *Id.* at 663. As detailed above, the Pertiles have plainly raised such proof, including as to facts expressly contemplated by *Lucero*. *See id.* at 663.

Moreover, the deposition excerpts on which GM relies constitute a few isolated, cherry-picked questions. Viewing the evidence in the light most favorable to the Pertiles, these could be understood as inquiring only into the facts surrounding their 2013 civil marriage ceremony. The Court finds this testimony far too limited and indirect to carry GM's burden in seeking judgment as a matter of law. *See Pelt*, 539 F.3d at 1280; *compare supra*, note 1 (isolated deposition questions at least arguably directed only towards civil marriage ceremony) *with Storey* at 69, 73 (proposing a "checklist" of over 20 topics for lawyers to address "to ensure detailed discussion at the deposition" when defending against a claim of common law marriage).

Finally, the affidavits filed by the Pertiles expressly state that each considered

the other to be their spouse "for many years prior to and including" the date of the accident. (ECF No. 165-1 ¶ 11; ECF No. 165-2 ¶ 10.) They further explain that when answering the questions posed at their depositions they "assumed we were discussing the formal civil marriage ceremony," and it was not their intent to suggest they did not have a common law marriage before that time. (ECF No. 165-1 ¶ 10; ECF No. 165-2 ¶ 9.)

GM argues that these constitute "sham affidavits" and should be disregarded. In ruling on summary judgment, the Court will not automatically exclude a witness's affidavit that conflicts with earlier deposition testimony. *Burns v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 330 F.3d 1275, 1281–82 (10th Cir. 2003). The Court will only disregard such affidavits "when [they] constitut[e] an attempt to create a sham fact issue." *Id.* (internal quotation marks omitted). "Factors to be considered in determining whether an affidavit presents a sham issue include . . . whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Id.* Here, drawing the reasonable inferences in the Pertiles' favor, the Court credits their explanation that the present affidavits are offered to explain confusion in their deposition testimony. *Cf. In re Marriage of Cargill and Rollins*, 843 P.2d 1335, 1338, 1339 (Colo. 1993) (recognizing, in statutory interpretation, ambiguity in the meaning "remarriage," as potentially referring either to the "act or instance" or "the state of being"). Accordingly, the Court does not disregard these submissions as sham affidavits.

In sum, GM has failed to show that there is no genuine dispute on the question of whether the Pertiles had a valid common law marriage on the date of the accident,

and summary judgment is therefore not warranted on this issue.

**B.     Whether a Common Law Spouse Can Bring a Loss of Consortium Claim?**

As a general statement, "Colorado law does not differentiate between a nonceremonial common law marriage and a ceremonial marriage." *Cargill and Rollins*, 843 P.2d at 1339. In addition, "common law marriages are valid, notwithstanding statutes that require ceremonial marriages to be solemnized by a minister or a magistrate, if no specific provision to the contrary exists." *J.M.H.*, 143 P.3d at 1118 (citing *Meister v. Moore*, 96 U.S. 76 (1877)). Accordingly, to the extent the Pertiles can prove they had a valid common law marriage, Ginger Pertile may pursue a loss of consortium claim on that basis, just as if they had been civilly married.

**C.     Whether Ginger Pertile Can Pursue Loss of Consortium Absent a Common Law Marriage**

Finally, as an alternative argument against summary judgment, the Pertiles suggest that Ginger Pertile could pursue a loss of consortium claim even if the Pertiles were not married at the time of the accident.

To the extent the Pertiles argue only that "a formal, civil marriage is not an absolute prerequisite to asserting a loss of consortium claim" (ECF No. 162 at 6), the Court agrees. *See supra*, Part III.B.; *accord Mattison v. Kirk*, 497 So. 2d 120, 122 (Ala. 1986) ("[A] ceremonial marriage is not a prerequisite to maintaining an action for loss of consortium. A common law marriage will support a consortium claim."), *overruled on other grounds by Carbon Hill Mfg., Inc. v. Moore*, 602 So. 2d 354 (Ala. 1992).

But, to the extent the Pertiles argue that Ginger Pertile might prevail on a loss of

consortium claim even without proving they had a valid common law marriage, the Court declines to reach this issue. Given the analysis above, it is unnecessary to resolve this alternative grounds to resolve GM's present Motion. Moreover, Plaintiffs cite no Colorado authority supporting this argument, and the Court finds the issue is not sufficiently developed to warrant a definitive legal ruling at this juncture of the proceedings. (*See* ECF No. 162 at 6.)

## IV. CONCLUSION

For the reasons set forth above, Defendant General Motors LLC's Motion for Partial Summary Judgment (ECF No. 154), as joined by Defendants TRW Vehicle Safety Systems, Inc. and Kelsey-Hayes Company (ECF No. 161), is DENIED.

Dated this 13th day of June, 2017.

BY THE COURT:

William J. Martínez
United States District Judge