**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 15-cv-0518-WJM-NYW

DANIEL PERTILE, and
GINGER PERTILE,

      Plaintiffs,

v.

GENERAL MOTORS, LLC, a Delaware limited liability company, and,
TRW VEHICLE SAFETY SYSTEMS, INC., a Delaware corporation,

      Defendants.

---

**ORDER GRANTING IN PART TRW VEHICLE SAFETY SYSTEMS, INC.'S**
**MOTION FOR SUMMARY JUDGMENT**

---

In this personal injury/product liability action pending under the Court's diversity jurisdiction, 28 U.S.C. § 1332(a), Plaintiffs Daniel and Ginger Pertile bring suit against Defendants General Motors, LLC ("GM") and TRW Vehicle Safety Systems, Inc. ("TRW") for claims including strict liability, negligence, breach of warranty, violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 *et seq.* ("CCPA"), and loss of consortium. (*See generally* ECF No. 254.) Now before the Court is Defendant TRW's Motion for Summary Judgment. (ECF No. 188). For the reasons set forth below, the Motion is granted as against Plaintiffs' CCPA claim, but is denied in all other respects.

### I. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000).

"To survive summary judgment, a nonmoving party must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which he carries the burden of proof." *Christy v. Travelers Indem. Co. of Am.*, 810 F.3d 1220, 1233 (10th Cir. 2016) (internal quotation marks omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987). "The moving party carries the burden of showing beyond a reasonable doubt that it is entitled to summary judgment." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (alterations incorporated; internal quotation marks omitted).

## II. BACKGROUND[1]

The following facts relevant to the present motion are undisputed where not

---

[1] Background regarding various aspects of this case, including the anticipated testimony offered by the parties' competing experts, has been set out in numerous prior orders and is not repeated here. (*See, e.g.*, ECF Nos. 254, 319, 332, 333, 342.) Familiarity with this case and the issues addressed in prior orders is presumed.

attributed or noted otherwise.

This case arises from a single vehicle rollover accident, in which Plaintiff Daniel Pertile was badly injured, near Vernal, Utah, on February 25, 2013 (the "Crash" or the "Rollover"). (*See generally* ECF No. 254 at 3–5.)[2]  In particular, he was the front seat passenger in a 2011 Chevrolet Silverado 2500HD, manufactured by GM.  (*See* ECF No. 254 at 3.)  At the time of the Rollover, Mr. Pertile was wearing the seatbelt with which the Vehicle was equipped.  TRW is the manufacturer who supplied the seatbelt assembly and its components.  (ECF No. 188 at 2, ¶¶ 4–5; ECF No. 216 at 3, ¶¶ 4–5.)

Plaintiffs proceed on product liability/design defect and related claims against GM as the manufacturer of the vehicle and against TRW as the manufacturer of the seatbelt.  As to the Vehicle's roof, Plaintiff's allege that "the roof and its supporting structures was [*sic*] weak and failed during the rollover, collapsed and intruded into the occupant compartment, and severely crushed into Mr. Pertile's survival space."  (ECF No. 254 at 4.)  As to the seatbelt assembly and components (or the "safety restraint system")—and therefore as against TRW—Plaintiffs allege that the seatbelt "failed to reasonaby protect [Mr. Pertile] during the rollover, allowing unreasonable and excessive excursion"—that is, movement of the Vehicle occupant up or away from the seat cushion and back—and that in combination "the roof and the restraint system were designed in such a way that the restraint system performance [was] degraded by roof crush and deformation during a rollover accident."  (*Id.*)  In its present Motion,

---

[2] All citations to docketed materials are to the page number in the CM/ECF header, which often differs from a document's internal pagination, as is true in documents with prefatory materials, and in transcript excerpts.  Strangely, it is also true of the Pretrial Order submitted by the parties, which begins its pagination with 5, rather than with 1.  (*See* ECF Nos. 237 & 254.)

TRW moves for summary judgment against all of Plaintiffs' claims.

## III.  ANALYSIS

**A.     Evidentiary Issues**

1.     <u>Expert Reports</u>

TRW's Reply Brief argues that Plaintiff cannot rely on the written reports of their experts in opposition to TRW's Motion for Summary Judgment.  (*See* ECF No. 250 at 2 ("An unsworn expert report is not competent summary judgment evidence (citing *Sofford v. Schindler Elevator Corp.*, 954 F. Supp. 1459, 1462–63 (D. Colo. 1997)).)

The problem with TRW's somewhat peevish insistence on this point is not only that it seeks to terminate Plaintiffs' claims on the basis of procedural gamesmanship rather than on their merits, but that TRW is simply wrong as a matter of current federal law.  Such a formalistic approach may still be required in some jurisdictions, *see, e.g.*, Tex. R. Civ. P. 166a(f) (requiring "[s]worn or certified copies of all papers"), but it was abandoned some years ago in the federal system (as lawyers admitted to practice in this Court probably ought to know).  *See* Fed. R. Civ. P. 56, Advisory Committee Notes to 2010 Amendment, Subdivision (c) ("The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.  A formal affidavit is no longer required.").[3]

---

[3] *Accord* Charles Wright et al., 10A *Federal Practice & Procedure* § 2722 (4th ed., April 2017 update) ("Prior to its amendment in 2010, Rule 56 required that a sworn or certified copy of any document referred to in an affidavit be attached to the affidavit.  Indeed, it was recognized that an exhibit could be used on a summary-judgment motion only if it were properly

In opposing summary judgment under Rule 56, a party "may object that the material cited . . . cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). However, "[a]t the summary judgment phase, evidence need not be submitted in a form that would be admissible at trial," only "the content or substance of the evidence must be admissible." *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006). It is only necessary for the party submitting the evidence to show "that it will be possible to put the information, the substance or content of the evidence, into an admissible form." *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016) (citation and internal quotation marks omitted). To the extent the cases cited by TRW hold otherwise, they are based on a superseded version of Rule 56.

Since the written reports of Plaintiffs' experts set out opinions that are anticipated to be offered in testimony at trial, there is no bar to considering those opinions here, other than any portion of an opinion the Court has found inadmissible pursuant to Federal Rule of Evidence 702.

2.    <u>Authenticity and Hearsay Objections</u>

In addition, TRW objects to various documents filed as exhibits to Plaintiffs' Opposition on grounds that they were not produced in discovery in this case, and that they are "unauthenticated" and "cannot be considered by a court in determining a

made part of an affidavit. * * * However, when the rule was amended in 2010, the rulemakers omitted these specific requirements, and simply added to the list of appropriate materials 'documents.' * * * It also is worth noting that although affidavits remain an available type of summary-judgment evidence, a formal affidavit is no longer required. Section 1746 of Title 28 specifically authorizes a written 'unsworn declaration, certificate, verification, or statement' signed by the person under penalty of perjury to substitute for an affidavit. Thus, all of these changes reduce the need to utilize affidavits on summary judgment today.").

summary judgment motion." (ECF No. 250 at 7 (citing *In re Harris*, 209 B.R. 990, 996 (B.A.P. 10th Cir. 1997)).)  This argument is also grounded in outdated procedural requirements for "authentication" of documents that Rule 56 no longer requires, as set out above.  Moreover, the documents are filed by way of an affidavit from Plaintiffs' counsel stating that each is a "true and correct copy" of what it appears to be.  TRW's authenticity objections are thus not well taken at this stage of litigation.

TRW further objects that the contents of these documents are inadmissible hearsay.  While the Court may consider such objections at this stage, the relevant question is not whether the document itself is or will be admissible, but whether the content or substance of the information it contains may be presented at trial in an admissible form, as explained above.  *Argo*, 452 F.3d at 1199.

The majority of the documents filed by Plaintiffs are TRW corporate documents, such as press releases, presentations made to clients, and annual reports.  At a minimum, it appears likely that most of the information they contain could be elicited in the trial testimony of a TRW corporate witness at trial, or brought out as impeachment on cross-examination if the points were not conceded.  Thus TRW's hearsay objections are, on the whole, not well taken at this stage of litigation.  However, as is clear below, no part of the Court's analysis turns on the admissibility of these documents, so the Court need not address each of TRW's objections to these documents individually.

**B.**     **Product Liability Claims:  Strict Liability & Negligence**

1.     <u>Product Defect</u>

Colorado law adopts the doctrine of strict liability in product liability, following the Restatement (Second) of Torts § 402A.  *Union Supply Co. v. Pust*, 583 P.2d 276, 280

6

(1978) (citing *Hiigel v. Gen. Motors Corp.*, 544 P.2d 983 (1975)). Generally speaking, "[t]he Colorado Products Liability Act, Colo. Rev. Stat. §§ 13-21-401 *et seq.*, defines 'manufacturer,' limits liability of sellers and distributors who are not manufacturers, and creates a presumption of non-defectiveness for products sold ten years or more before any claimed injuries. Under Colorado law, the *sine qua non* of a strict liability claim is the 'sale' of a 'product.'" *Hidalgo v. Fagen, Inc.*, 206 F.3d 1013, 1017–18 (10th Cir. 2000). To establish liability, "[a] plaintiff has the burden of persuasion as to the defective condition of a product. Regardless of whether a product liability action is grounded in negligence or strict liability, a plaintiff must prove that the product was defective." *Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198, 205 (Colo. 1992); *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1300 (10th Cir. 2010).

Plaintiffs may pursue such a claim here against TRW as the manufacturer of a component used in the Vehicle, and it is undisputed that TRW manufactured and supplied the seatbelt components and assembly. (ECF No. 188 at 2, ¶ 4.) Colorado law "follow[s] the majority view that a manufacturer of component parts may be held strictly liable for injuries to a consumer caused by design defects in the component parts when they are expected to and do reach the consumer without substantial change in condition." *Union Supply*, 583 P.2d at 281.

TRW argues the only defect alleged by Plaintiffs "is that the seat belt assembly did not have certain additional features," as raised in the alternative design opinions of Plaintiffs' expert, Mr. Stephen Syson. (ECF No. 188 at 6; ECF No. 342 at 5–6.) TRW also argues it "did not have the authority to include" those alternative features in the products supplied to GM, because TRW only "supplies specific seat belt components in

response to a request" from GM, and "could not have independently decided to supply seat belt components other than what GM requested in its specifications." (ECF No. 188 at 7.)

The parties dispute to what extent, if any, TRW shared responsibility with GM for designing the seatbelt components and assembly, whether it was free to suggest or require modifications in GM's specifications, or whether it was, as TRW claims, strictly and entirely beholden to product specifications dictated by GM. (*Compare* ECF No. 188 at 2–3, ¶¶ 6–9 *and id.* at 7–9 *with* ECF No. 216 at 3–4, ¶¶ *and id.* at 11–13.) TRW claims it "could not have independently decided to supply seat belt components other than what GM requested" (ECF No. 188 at 7), while Plaintiffs contend that TRW not only supplied, but also "designed and manufactured" the seatbelt components, and is therefore liable for any defects in them (ECF No. 216 at 3).

However, the Court need not decide whether this factual dispute is genuine, because even assuming TRW is correct on its version of the facts, TRW has not identified legal authority that would entitle it to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a) (movant must show both "no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law" (emphasis added).)[4]

TRW does not dispute that it was the manufacturer of the seatbelt assembly and all of its relevant parts.[5] (*See* ECF No. 188 at, 2, ¶¶ 4–5.) Plaintiffs allege that those

_____

[4] Since the Court finds it immaterial whether a genuine factual dispute remains as to the extent of TRW's involvement in designing the seatbelt, the Court also need not definitively resolve TRW's evidentiary objections as they relate to this issue. (*See* ECF No. 250 at 7, 11.)

[5] Unlike the Court's grant of the corresponding motion for summary judgment by component part manufacturer Kelsey-Hayes Company, there is no factual dispute here that TRW manufactured all of the relevant seatbelt components, or that to the extent Plaintiffs can

components were defective in their design. (*See* ECF No. 254 at 4.) In particular, Plaintiffs' design expert, Mr. Syson, is expected to testify that the "safety belt system . . . was defective because during the rollover collision, he was inadequately restrained, in part since slack was introduced into his seatbelt restraint due to crush and the system lacked a rollover sensor that would have deployed [a] pretensioner." (ECF No. 216-2 at 7.)

Other evidence tends to confirm that there was, in fact, slack or "surplus webbing" in the seatbelt at the time of the Rollover. (*See, e.g.*, ECF No. 216-3 at 2.) And, at least in part because of that slack, GM's experts opine that "Mr. Pertile moved up into the . . . roof before there was significant deformation to that roof." (*Id.* at 3.) Mr. Syson also opines that if the jury were to accept GM's view of how Mr. Pertile was injured during the Rollover, this would tend to show that the seatbelt assembly was defective, because it failed to prevent dangerous movement within the Vehicle before it deformed, and that alternative design elements could have reduced or eliminated this risk. (*See* ECF No. 216-2 at 23–29.)

This evidence, viewed in the light most favorable to Plaintiffs, could support a reasonable jury finding that the seatbelt assembly and components suffered from one or more design defects. Since the Court has separately denied TRW's motion to exclude Mr. Syson's opinions under Rule 702 (*see* ECF No. 342), the Court finds that the evidence before it reflects a genuine dispute on the issue of whether the seatbelt components and assembly manufactured by TRW were defective.

---

prove defects in the seatbelt components, those components were manufactured by TRW, rather than by some other entity. (*See* ECF No. 333 at 4 & n.4, 10–12.)

TRW's request for summary judgment therefore rests on the legal claim that a component part manufacturer cannot be held liable so long as its components were manufactured to specifications set and controlled by the manufacturer or assembler of the final product. (*See* ECF No. 188 at 7 (arguing "*most importantly*, [TRW] does not make the decisions on which of [the seatbelt] components GM will include in its seat belt assembly" (emphasis added)).) But no authority cited by TRW supports that proposition.

TRW relies principally on *Hidalgo*. But *Hidalgo* says nothing about a component part manufacturer's reliance on specifications provided to it. In *Hidalgo* the defendant manufactured a screw conveyor that was a component of a meat rendering system, and the plaintiffs' expert "discussed the screw conveyor as it functioned in the final . . . system," concluding that "alternative designs would vitiate [the dangerous] condition." 206 F. 3d at 1017. The Court found those concerns "[did] not allege defects in the component part standing on its own." *Id.* But that is not the case here, where Plaintiffs *do* allege defects in the seatbelt assembly "standing on its own," and the Court finds that those allegations present genuinely disputed issues for trial. *Hidalgo* therefore does not support summary judgment, and also does not stand for the proposition that only the entity which provided specifications for a defective component may be held liable for it.

TRW also cites to *Shaw v. General Motors Corp.*, 727 P.2d 387 (Colo. 1986), for the proposition that "[t]he duty to evaluate or foresee 'the risks arising from not installing a specific safety feature' is 'appropriately placed upon the entity that designed the final product, arranged for acquisition of all the component parts, and directed their

assembly.'" (ECF No. 188 at 8–9 (quoting *Shaw*, 727 P.3d at 390).)  *Shaw* also does not support TRW's position.

The language from *Shaw* that TRW quotes arises in a negligence analysis addressing whether the component manufacturer had a duty of care to the buyer of the final product.  727 P.2d at 390.  That analysis has no bearing on whether a component part is defective (*i.e.*, in a "defective condition unreasonably dangerous to the user"), nor on whether a component part manufacturer may be held strictly liable.[6]  In addition, the facts of *Shaw* show that the decision does not support granting summary judgment here.  In *Shaw*, the plaintiff argued that component manufacturers who provided a truck chassis and a dump bed that were later assembled into a pothole repair truck should be held liable for the lack of a backup alarm on the assembled final vehicle.  727 P.3d at 387.  *Shaw* held these defendants were not strictly liable, because their component parts contained no defects related to rear-view visibility until the truck was assembled. *Id.* at 389–90.  In other words, in *Shaw* the alleged defect was not contained in the components manufactured by these defendants.

Here, in contrast, Plaintiffs allege the seatbelt assembly and components manufactured by TRW contained a design defect which relates to the same risk arising

---

[6] *See, e.g., Bradford v. Bendix-Westinghouse Auto. Air Brake Co.*, 517 P.2d 406, 413 (Colo. App. 1973) ("Under strict liability, the focus is not on the conduct of the defendant, but rather, on the product itself and the consumer's expectations with regard to that product."); *see generally Hiigel*, 544 P.2d at 988 ("manufacturer's liability in strict tort does not rest upon the normal negligence rules of foreseeability, but upon the newer concept of enterprise liability for casting a defective product into the stream of commerce" (internal quotation marks omitted; alterations incorporated)).  While the analysis in *Shaw* might call for analyzing TRW's strict liability and negligence claims separately, TRW does not do so.  (*See* ECF No. 188 at 4–6.) Neither, then, will the Court.  *Meyer v. Bd. of County Comm'rs*, 482 F.3d 1232, 1242 (10th Cir. 2007) (courts are "not charged with making the parties' arguments for them").

in this case, that is, a rollover crash in the Vehicle which remained in the condition that was expected by TRW, and with no substantial changes to TRW's component parts. *See Union Supply*, 583 P.2d at 281.

The only other authority cited by TRW is *Bond v. E.I. DuPont de Nemours and Co.*, 868 P.2d 1114, 1118–19 (Colo. App. 1993). As the Court addressed in its prior order on Defendant Kelsey-Hayes's Motion for Summary Judgment, *Bond* stands for the proposition that in order for a component part manufacturer to face product liability, there must be a defect in the component manufactured by that defendant, not merely in the final or assembled product. (ECF No. 333 at 10.) Here, Plaintiffs allege design defects in the seatbelt assembly manufactured by TRW, and genuine factual disputes remain on that claim. Like *Shaw*, therefore, *Bond* does not immunize a component part manufacturer from liability simply because another entity provided specifications which the component part manufacturer faithfully followed.

In addition to the lack of supporting authority, TRW's proposed rule of immunizing component manufacturers who follow the assembler's specifications would seem to contradict the definition of "manufacturer," which encompasses and imposes liability on both the entity that "designs" a defective component part, and also any entity that "assembles, fabricates, produces, constructs, or otherwise prepares," the component part. *See* Colo. Rev. Stat. § 13-21-401(1).[7]

---

[7] TRW's position is also at odds with the well-established rationale for imposing strict liability in tort in product defect cases. *See* Restatement (Second) of Torts § 402A, cmt. c ("public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products"); *Hiigel*, 544 P.2d at 987 (adopting § 402A).

Finally, and significantly, Plaintiffs' opposition brief cites several cases which

Plaintiffs argue stand for the proposition that a component part manufacturer may be

liable for defects in its products "even where the assembler of the final product provides

product specifications." (ECF No. 216 at 7.)[8]  In their Reply brief, TRW does not

distinguish these cases, cite any contrary authority, or respond to this argument in any

other way.  TRW ignores this argument and these authorities, and simply reiterates its

reliance on *Hidalgo*.  (*See* ECF No. 250 at 6–8.)  The Court therefore treats Plaintiffs'

argument on this point as conceded and unopposed.  *See Phillips v. Calhoun*, 956 F.2d

949, 953–54 (10th Cir. 1992) ("A litigant who fails to press a point by supporting it with

pertinent authority, or by showing why it is sound despite a lack of supporting authority

---

[8] Plaintiffs cite *Hendricks v. Comerio Ercole*, 763 F. Supp. 505, 512–13 (D. Kan. 1991) (applying Kansas law; denying summary judgment as to component manufacturer and rejecting argument that [component manufacturer] should be relieved from liability because it merely carried out the plans, specifications, and directions given to it by [final assembler]" (internal quotation marks omitted)); *Michalko v. Cooke Color & Chem. Corp.*, 451 A.2d 179, 183 (N.J. 1982) ("the fact that the product was built according to the plans and specifications of the owner does not constitute a defense to a claim based on strict liability for the manufacture of a defective product when the injuries are suffered by an innocent foreseeable user of the product"); *Carey v. Hy-Temp Mfg., Inc.,* 702 F. Supp. 666, 670 (N.D. Ill. 1988) (applying Illinois law; "a component maker can be held liable if its component is defective for a known use, and a component maker who follows the specifications of the finished product producer can be held liable if the specifications are 'obviously dangerous'"); and *Halliburton v. Pub. Serv. Co. of Colorado*, 804 P.2d 213, 216 (Colo. App. 1990) (stating in a negligence case that "[w]hen a party can reasonably foresee that its product will be used as an integral component of a defective and unreasonably dangerous product, there is a duty upon that party to undertake corrective action to alleviate, if possible, the hazard.").

The Court agrees that these cases, while not controlling, are generally supportive of Plaintiffs' position.  However, the Court need not reach the question of whether the statement of law posed by Plaintiffs is true as a general matter under Colorado law, nor whether the prerequisite of "obviously dangerous" specifications articulated in *Carey* should apply. (*See* ECF No. 216 at 7 (arguing a component manufacturer "is liable for defects in its products * * * even where the assembler of the final product provides product specifications").)  The burden under Rule 56 is on TRW to show entitlement to judgment as a matter of law, and by failing to respond to Plaintiffs' authorities or cite controlling authority supporting its own position, TRW has not carried that burden.

or in the face of contrary authority, forfeits the point." (internal quotation marks omitted)). Given TRW's failure to respond, and its lack of authority that supports its claim of immunity because it allegedly followed GM's specifications, TRW has not met its burden of "establishing that summary judgment is appropriate as a matter of law." *Pelt*, 539 F.3d at 1280.

### 2. Causation

TRW also argues for summary judgment on grounds that "the seatbelt assembly did not cause Mr. Pertile's injury." (ECF No. 188 at 4.) Causation is a necessary element of Plaintiffs' strict liability and negligence claims for product liability. *Bond*, 868 P.2d at 1118–19 (strict liability); *Davenport v. Cmty. Corr. of Pikes Peak Region, Inc.*, 962 P.2d 963, 966 (Colo. 1998) (negligence).

TRW points to testimony from Plaintiffs' biomechanical expert, Dr. Mariusz Ziejewski, who opines (and is expected to testify) that the cause of Mr. Pertile's injuries was roof crush, and that "a properly functioning seatbelt would not have been able to reduce the likelihood of injury." (ECF No. 188-5 at 14.) Likewise, Plaintiffs' design expert, Mr. Syson, generally agrees with Dr. Ziejewski's assessment of causation, and has testified to the effect that alternative seatbelt designs might not have made "a lot of difference," given the degree of roof crush. (*See, e.g.*, ECF No. 188-4 at 8–10, 15; *see generally* ECF No. 342 at 7–8.)

However, Plaintiffs argue that they pursue theories of defect and causation as to both a defective roof and a defective seatbelt assembly in the alternative. Plaintiffs point out that the testimony from GM's experts, if believed, could lead the jury to conclude that the roof crush was *not* the cause of Mr. Pertile's injuries. (*See* ECF No.

14

216 at 8 (collecting evidentiary sources); ECF No. 216-3 at 3 (GM's expert, Dr. Elizabeth Raphael, M.D. opining she "believe[]s Mr. Pertile moved up into the . . . roof before there was significant deformation"); ECF No. 216-5 at 8 (GM's expert Ms. Huizhen Lu, opining that "[t]he scientific data does not support that a stronger roof . . . would provide additional protection to occupants in rollover crashes").)

Thus, as set out above, and *supra* at 9–10, GM's evidence, could permit a reasonable jury to find that excess "excursion," or movement out of the seat and within the cab during the Rollover, and during or before the roof deformation, was the cause of Mr. Pertile's injuries, and that such excursion was the result of slack or excess webbing in the seatbelt, or of overall design defects in the seatbelt assembly, rather than the degree of roof crush. Therefore, a genuine dispute regarding causation remains, because a reasonable jury could conclude from the evidence that a defective seatbelt was a "but for" cause of Mr. Pertile's injuries. *See Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 985 (Colo. App. 2011) ("but for" causation required for negligence claim). Summary judgment is therefore not appropriate on this issue.

## C.     Breach of Warranty Claim

TRW argues that Plaintiffs' breach of warranty claim must fail for lack of proof of either causation or a lack of fitness. Those arguments fail for the same reasons that trial is required on Plaintiffs' negligence and strict liability claims, explained above. *Supra*, Part III.B.

In addition, TRW argues that Plaintiffs "never provided notice of the alleged breach of warranty . . . as required by Colorado statute," and failed to plead the required notice of breach, also mandating dismissal of Plaintiffs' breach of warranty

15

claims.  (ECF No. 188 at 10.)

Colorado Revised Statutes § 4-2-607(3)(a) provides that a buyer "must within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy."  "Compliance with the notice requirement is generally a condition precedent to recovery for a breach of warranty claim under the Uniform Commercial Code."  *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 206 (Colo. 1984).  However, "no prescribed form of notice is required."  *Id.*  "The notice requirement of § 4-2-607(3)(a). . .  serves three purposes: It provides the seller with an opportunity to correct any defect, to prepare for negotiation and litigation, and to protect itself against stale claims asserted after it is too late for the seller to investigate them."  *White v. Miss. Order Buyers, Inc.*, 648 P.2d 682, 684 (Colo. App. 1982).

"Whether the notice was given within a reasonable time depends on the nature, purpose and circumstances of the notice."  *Id.* (internal quotation marks omitted).  "The buyer has the burden of proof that the notice was given within a reasonable time."  *Id.* When disputed, this determination entails a question of fact appropriate for submission to a jury.  *W. Conference Resorts, Inc. v. Pease*, 668 P.2d 973, 976 (Colo. App. 1983); Colo. Jury Instr., 4th-Civ. § 14:8 (June 2017 update) ("CJI-Civ.").

TRW cites *Shultz v. Linden-Alimak, Inc.*, 734 P.2d 146 (Colo. App. 1986), in which the Colorado Court of Appeals affirmed dismissal of the plaintiff's breach of warranty claims.  In *Shultz*, the court offered little analysis, but noted that the plaintiff had admitted no notice was given.  *Id.* at 150.  The court treated the lack of notice as a pleading defect.  *Id.*  However, unlike *Shultz*, Plaintiffs here do dispute whether they provided notice which a jury might find was timely and reasonable in the

circumstances.  Plaintiffs rely on *Palmer*, where the Colorado Supreme Court held that "in the context of a retail purchase, the filing of a lawsuit, under some circumstances, may be sufficient to provide notice to a defendant," and that on the facts raised there, although defendant had not been notified of the plaintiff's claim until the lawsuit was filed two years after the injury, the defendant was not denied any evidence that would have been available with earlier notice, nor prejudiced by the manner in which it received notice.  *Palmer*, 684 P.2d at 207 n.3.

The Court finds that *Palmer* defeats TRW's request for summary judgment on this issue.  A genuine dispute remains as to whether Plaintiffs provided TRW with reasonable notice by filing suit, and that issue is properly submitted to the jury. *See* CJI-Civ. §§ 14:8 & 14:15.  In addition, *Palmer* holds that the filing of a complaint can by itself provide sufficient notice.  To the extent the Colorado Court of Appeals in *Schultz* held failure to plead notice constituted a pleading defect, that position simply cannot be squared with, and as a consequence must yield to, the Colorado Supreme Court's holding in *Palmer*.  It manifestly cannot be true that a plaintiff's failure to plead notice in his complaint is fatal to his breach of warranty claim, given that the filing of the complaint may itself provide the required notice.  *Palmer*, 684 P.2d at 207 n. 3. Accordingly, TRW's request for summary judgment against Plaintiffs' breach of warranty claim is denied.[9]

---

[9] In its Reply, TRW argues that "Plaintiffs tender no proof of the existence of any express warranty."  (ECF No. 250 at 9.)  Since this argument was first raised in a Reply, the Court does not consider it.  *Coleman v. B-G Maint. Mgmt. of Colo., Inc.*, 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived.").

**D.      Colorado Consumer Protection Act Claim**

To prevail on a claim under the CCPA, Plaintiffs must establish, among other elements, that TRW committed a deceptive trade practice and that the challenged practice caused Plaintiffs' injuries.  *See Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 147 (Colo. 2003).  To prove a deceptive trade practice, "the plaintiff must show that a defendant knowingly makes a false representation."  *Id.* (internal quotation marks omitted).

Here, in addition to other arguments, TRW moves for summary judgment on grounds that "CCPA claims must be pleaded with the factual particularity required by Fed. R. Civ. P. 9(b)" for fraud claims.  (ECF No. 188 at 10 n.1 (citing *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985).)  Although it appears no Colorado court (and no published decision since *Duran*) has held likewise, decisions in this District Court have consistently held that CCPA claims must be pled with the particularity required of fraud claims under Rule 9(b), and the Court is unaware of contrary authority.[10]

Plaintiffs do not respond to this argument in any way, either to argue that the particularity requirement of Rule 9(b) does not apply, or to argue that they have met it. Plaintiffs have thus conceded this point, warranting summary judgment in TRW's favor

---

[10] *See, e.g., Allbrandt v. Bank of Am., N.A.*, 2015 WL 1186660, at *4 n. 7 (D. Colo. Mar. 12, 2015); *Int'l Acad. of Bus. & Fin. Mgmt., Ltd. v. Mentz*, 2013 WL 3771288, at *6 (D. Colo. July 17, 2013); *Adams v. FedEx Ground Package Sys., Inc.*, 2013 WL 1164426, at *6 (D. Colo. Mar. 1, 2013), *recommendation adopted*, 2013 WL 1163952 (D. Colo. Mar. 21, 2013), *aff'd*, 546 F. App'x 772 (10th Cir. 2013); *D.R. Horton, Inc.-Denver v. The Travelers Indem. Co. of Am.*, 2012 WL 527204, at *3 (D. Colo. Feb. 16, 2012); *Gates Corp. v. Dorman Prod., Inc.*, 2009 WL 5126556, at *5 (D. Colo. Dec. 18, 2009); *see also State ex rel. Suthers v. Mandatory Poster Agency, Inc.*, 260 P.3d 9, 13 (Colo. App. 2009) (citing *Duran* without reaching issue).

on Plaintiffs' CCPA claim.  *See Phillips,* 956 F.2d at 953-54.  Moreover, the Court's

review finds that neither Plaintiff's Complaint (ECF No. 31), nor the Final Pretrial Order,

meets the standard of pleading with particularity required by Rule 9(b).  The pleading

requirement "only requires identification of the circumstances constituting fraud."

*Duran*, 616 F. Supp. at 793.  But a plaintiff must "set forth the time, place and contents

of the false representation, the identity of the party making the false statements and the

consequences thereof."  *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1254

(10th Cir. 2016).

     Here, Plaintiffs' Complaint alleges only boilerplate and general allegations

regarding TRW's knowledge and misrepresentations or alleged withholding based on

that knowledge.[11]  Thus, in addition to the fact that Plaintiffs do not dispute the point,

---

[11] The Complaint alleges, as background, that TRW was one of a group of companies denominated as the "Seatbelt Defendants" (including numerous "John Doe" entities, which have since been dismissed).  It alleges that all of these "Seatbelt Defendants" were "believed to have engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, approved, repaired, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold safety restraint systems, including the safety restraint systems incorporated into the [V]ehicle."  (ECF No. 31 ¶ 7.)

     The Complaint also alleges that the "Seatbelt Defendants knew, or . . . should have known of the dangers" of multiple alleged defects in the seatbelt system, and that "[t]he Seatbelt Defendants' knowledge as described in this Complaint is believed to be reflected in the Seatbelt Defendants' internal communications," as well as in "compilations and analysis of accident data," in "tests conducted by the Seatbelt Defendants and others," and in "the results of other studies and analysis."  (*Id.* ¶¶ 74–79.)

     As to Plaintiffs' CCPA claim, the Complaint alleges only that all Defendants "made false representation to the effect that their respective products were of a particular standard and quality, at a time when the Defendants knew these representations were false," and "failed to disclose material information concerning their respective products, which were known at the time they advertised and sold them, and such failure to disclose was intended to induce consumers to buy the Defendants' products," and further that the "Seatbelt Defendants failed to disclose material information relating to the safety of the subject seatbelt system and its components and thereby intended to induce consumers to purchase products they otherwise would not have purchased."  (*Id.* ¶¶ 121–22 & 124.)

the Court finds that the Complaint falls far short of Rule 9(b)'s particularity requirement because it does not even vaguely reference the time, place, or circumstances of the generically-pleaded failure to disclose information, nor does it identify with any particularity what information was allegedly withheld.

Likewise, the Final Pretrial Order, drafted after completion of discovery, contains even fewer specific factual allegations, stating only that Plaintiffs maintain the claims pled in the Complaint, and baldly stating that a CCPA claim is pled, without articulating on what basis.[12] (ECF No. 254 at 5.) Even Plaintiffs' summary judgment briefing—without acknowledging TRW's argument under Rule 9(b)—does no more than to state generally that "TRW . . . sold a defective product but failed to disclose vital rollover safety hazard information to either GM or to end users such as Mr. Pertile," but does not identify what "vital" information was known to TRW, nor when, how, or in what circumstances that information was not disclosed. The evidence cited by Plaintiffs' for the claim that TRW "knew of the rollover safety hazards" is likewise unavailing.[13]

_____

[12] The Final Pretrial Order is the is "the controlling document for trial," and "preparation of a pretrial order requires careful attention and review by the parties and their attorneys." *Wilson v. Muckala*, 303 F.3d 1207, 1215 (10th Cir. 2002). It "supersedes the pleadings and controls the subsequent course of litigation." *Hullman v. Bd. of Trustees of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991).

[13] Summary judgment would also be warranted on the merits of Plaintiff's CCPA claim. Plaintiffs argue their claim is viable on the basis of a "failure to disclose," citing *In re Porsche Cars N.A., Inc.*, 880 F. Supp. 2d 801, 834 (S.D. Ohio 2012). *Porsche* relied on *Warner v. Ford Motor Co.*, 2008 WL 4452338, at *9–11 (D. Colo. Sept. 30, 2008), for the proposition that "the act of distributing and selling a product constitutes a 'statement' to consumers that the product is reasonably safe for its intended use. In such a case, a defendant's failure to disclose defects that present a known safety risk to consumers is an actionable misrepresentation under the CCPA." 880 F. Supp. 2d at 834. In *Warner*, Senior U.S. District Judge John L. Kane denied summary judgment and permitted a CCPA claim to go forward on the "novel theory . . . that Ford marketed a product knowing it had a safety defect that it failed to disclose." 2008 WL 4452338, at *10. Specifically, Judge Kane found that a "reasonable jury could infer from the [plaintiffs'] evidence that Ford knew its roofs were not strong enough to protect adequately . . .

Thus, in light of Plaintiff's concession on this issue, and given the Court's own review of

the record, the Court finds that Plaintiffs' CCPA claim against TRW has never been

pled or articulated with sufficient particularity under Rule 9(b) and is subject to

dismissal on that basis.

**D.     Loss of Consortium Claim**

Plaintiff Ginger Pertile's loss of consortium claim is derivative, meaning it is

based on the viability of Daniel Pertile's claims for his injuries.  *See, e.g.*, *Colorado*

---

from roof collapse during a rollover, and in particular that Ford knew the 1995 Ford Explorer's roof was not strong enough, and yet Ford kept this knowledge from the public."  *Id.* at *12. Among extensive other evidence discussed, the denial of summary judgment was based on "internal testing indicating that roof collapse was a serious danger," and reflecting that "Ford adopted a lower . . . standard" than what its own tests recommended.  *Id.* at *11.

Here, Plaintiffs briefing argues that "TRW knew of the rollover safety hazards and ways to reduce such hazards," and that its "direct failure to disclose this information" constitutes Plaintiffs' CCPA claim.  (ECF No. 216 at 20.)  These generalities fall short of showing that TRW actually knew of a safety defect, and Plaintiffs evidentiary record here does not come close to the showing that warranted denial of summary judgment in *Warner*.  Plaintiffs here cite to two pages of deposition testimony from a TRW representative, which refer to development of an unspecified "product," but no more.  (*Id.*; ECF No. 216-10 at 3–4.)  Plaintiffs then cite in bulk (*i.e.*, without directing the Court to any particular document or passage) to over 100 pages of material spread across 12 separate exhibits.  (ECF No. 216 at 20 (citing "Exs. J, K and O through X, [as] evidence TRW knew of the rollover safety hazards and ways to reduce such hazards").)  Even assuming the Court may consider these materials over TRW's hearsay objections, Plaintiffs' non-specific, wholesale citation in support of generalized claims violates D.C.COLO.LCivR 7.1(e) and fails to discharge Plaintiffs' burden in opposing summary judgment.  A party responding to a motion for summary judgment must "ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record."  *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004).  The Court is not obliged to "comb the record" to make a party's case for it.  *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000).  The Court's own review of the materials docketed by Plaintiffs sheds little light on how they support Plaintiffs' CCPA claim.  Some refer to airbags, not seatbelts, and are of dubious relevance to any issue in this case.  (*See* ECF No. 216-12 at 2–3.)  Others are patents publicly registered by TRW, TRW press releases, and annual reports—all documents which tend to show information that TRW released to the public, not information it concealed.  (*See* ECF Nos. 216-14, 216-15, 216-17, 216-19.)  As a whole, these documents at most show that TRW was aware in general of rollover risks, and in general manufactured or was developing products that might address those risks.  But even viewed in the light most favorable to Plaintiffs, this falls short of establishing a genuine dispute that TRW knew of a defect in the seatbelt at issue here or *knowingly* concealed any identified safety information at any time.

*Comp. Ins. Auth. v. Jorgensen*, 992 P.2d 1156, 1164 (Colo. 2000) ("Derivative claims
. . . depend entirely upon the right of the injured person to recover."). Here, TRW's only
argument against Ginger Pertile's loss of consortium claim is that she and Daniel
Pertile were not legally married at the time of the Crash. (ECF No. 188 at 11.) The
Court has separately denied Defendants' Motion for Summary Judgment on that issue,
given the factual dispute as to whether the Pertiles had a valid Colorado common law
marriage at the relevant time. (ECF No. 312.) Ginger Pertile's claim against TRW for
loss of consortium therefore survives for trial.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.  Defendant TRW Vehicle Safety Systems Inc.'s Motion for Summary Judgment
    (ECF No. 188) is GRANTED IN PART and DENIED IN PART as follows:

    a.  Summary Judgment is GRANTED in favor of TRW and against Plaintiffs
        on Plaintiffs' claim for violation of the Colorado Consumer Protection Act;
        and

    b.  TRW's Motion is in all other respects DENIED.

Dated this 22nd day of September, 2017.

BY THE COURT:

William J. Martínez
United States District Judge